**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

STEPHEN BUSHANSKY, On Behalf of Himself and All Others Similarly Situated,

      Plaintiff,

v.

DCT INDUSTRIAL TRUST, INC.,
THOMAS F. AUGUST,
MARILYN A. ALEXANDER,
RAYMOND B. GREER,
JOHN S. GATES JR.,
TRIPP H. HARDIN III,
TOBIAS HARTMANN,
PHILIP L. HAWKINS, and
MARCUS L. SMITH,

      Defendants.

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

---

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this class action on behalf of the public stockholders of DCT Industrial Trust, Inc. ("DCT" or the "Company") against DCT and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated

thereunder and to enjoin the vote on a proposed transaction, pursuant to which the Company will be acquired by Prologis, Inc. ("Prologis") (the "Proposed Transaction").

2.     On April 29, 2018, DCT and DCT Industrial Operating Partnership LP, a Delaware limited partnership (the "Partnership" and, together with DCT, the "DCT Parties") issued a press release announcing entry into an Agreement and Plan of Merger (the "Merger Agreement") with Prologis, and Prologis, L.P., a Delaware limited partnership ("Prologis OP" and, together with Prologis, the "Prologis Parties").  Upon the terms and subject to the conditions set forth in the Merger Agreement, (a) the Partnership will merge with and into Prologis OP, with Prologis OP surviving the merger (the "Partnership Merger"); and (b) immediately following the Partnership Merger, DCT will merge with and into Prologis, with Prologis surviving the merger (the "Company Merger" and, together with the Partnership Merger, the "Mergers").

3.     At the effective time of the Company Merger, each share of DCT common stock shall automatically be converted into the right to receive 1.02 (the "Exchange Ratio") validly issued, fully paid and non-assessable shares of Prologis common stock (the "Merger Consideration").

4.     In an attempt to secure stockholder support for the Proposed Transaction, on June 8, 2018, Prologis filed a Form S-4 Registration Statement (as amended on July 6, 2018, the "Registration Statement") with the SEC containing a joint proxy statement/prospectus.  The Registration Statement, which recommends that DCT stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) DCT and Prologis' financial projections, relied upon by DCT's financial advisor, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch") in its financial analyses; (ii) the

valuation analyses prepared by BofA Merrill Lynch in connection with the rendering of its fairness opinion; (iii) material information concerning the sale process leading up to the Proposed Transaction; and (iv) BofA Merrill Lynch's potential conflicts of interest  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

5.      In short, unless remedied, DCT's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.   Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act.

7.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  DCT is headquartered in this District.   Moreover, each of the Individual Defendants, as Company

officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

9.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of DCT common stock.

10.     Defendant DCT, a Maryland corporation, together with its subsidiaries, is a leading industrial real estate company specializing in the ownership, acquisition, development, leasing and management of bulk distribution and light industrial properties located in high-demand distribution markets in the United States.  DCT's corporate headquarters are located at 555 17th Street, Suite 3700, Denver, Colorado 80202.  The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "DCT."

11.     Defendant Thomas F. August ("August") is Chairman of the Board and has served as a director of the Company since 2006.

12.     Defendant Marilyn A. Alexander ("Alexander") has been a director of the Company since 2011.

13.     Defendant Raymond B. Greer ("Greer") has been a director of the Company since 2010.

14.     Defendant John S. Gates Jr. ("Gates") has been a director of the Company since 2006.

15.     Defendant Tripp H. Hardin III ("Hardin") has been a director of the Company since 2002.

16.     Defendant Tobias Hartmann ("Hartmann") has been a director of the Company since 2016.

17.     Defendant Philip L. Hawkins ("Hawkins") has been a director and Chief

4

Executive Officer ("CEO") of the Company since 2006 and President of the Company since 2016.

18.     Defendant Marcus L. Smith ("Smith") has been a director of the Company since 2017.

19.     Defendants August, Alexander Greer, Gates, Hardin, Hartmann, Hawkins and Smith are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

20.     Prologis, a Maryland corporation, is the global leader in logistics real estate with a focus on high-barrier, high-growth markets. Its headquarters are located at Pier 1, Bay 1, San Francisco, California 94111.   Prologis's common stock is traded on the New York Stock Exchange under the ticker symbol "PLD."

21.     Prologis OP is a Delaware limited partnership.

22.     The Partnership is a Delaware limited partnership.

**CLASS ACTION ALLEGATIONS**

23.     Plaintiff brings this action as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the other public stockholders of DCT (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24.     This action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable.  As of June 29, 2018, there were approximately 95,995,378 shares of DCT common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26.     Questions of law and fact are common to the Class, including, among others,

whether the defendants have violated Sections 14(a) and/or 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder by issuing the materially false and misleading Registration Statement to DCT stockholders.

27.      Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.   Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28.      The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29.      Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

30.      DCT is an industrial real estate company based in Denver, Colorado.   The Company specializes in the ownership, acquisition, development, leasing and management of bulk-distribution and light-industrial properties located in high-demand U.S. distribution markets, including New Jersey, Atlanta, Houston, Dallas, Seattle and Northern and Southern

California.   As of December 31, 2017, the Company owned interests in approximately 74.8 million square feet of properties leased to approximately 850 customers.

31.     DCT's business has blossomed in recent years.   Driven by an increase in demand for industrial property in the U.S. with the growth of Amazon and e-commerce, DCT's total revenue grew by nearly 47% from 2013 to 2017, with its stock price rising from the mid-$20's in 2013 to as high as $60 in late 2017.   Indeed, in 2017, the Denver Business Journal ranked DCT the 14th-fastest growing company in Colorado, with net income growing 89.28% between 2014 and 2016.

32.     Underscoring the Company's potential for future growth, on November 2, 2017, DCT announced its third quarter 2017 financial results, including net income attributable to common stockholders ("Net Earnings") of $25.8 million, or $0.28 per diluted share, a 64.7% increase per diluted share compared to its third quarter 2016 Net Earnings of $15.6 million, or $0.17 per diluted share.   The Company also increased its quarterly dividend 16.1% to $0.36 per share and raised and narrowed its 2017 Net Earnings guidance to between $1.01 and $1.03 per diluted share, up from $0.84 to $0.90.   Commenting on the successful quarter, defendant Hawkins was quoted as stating:

> We delivered another strong quarter of growth in both our financial and operating results. . . .   Market fundamentals, driven by high occupancy and upward pressure on rents, have never been better.   Our development program also continues to outperform as we leased 943,000 square feet of space since June 30th and acquired several highly-desirable infill land sites for future development. Reflecting the strong growth in our earnings, we are pleased to announce a 16.1 percent increase in our quarterly dividend.

33.     The positive news continued for DCT stockholders.   On February 1, 2018, DCT announced its fourth quarter and full-year 2017 financial results.   For the quarter, DCT announced Net Earnings of $0.22 per diluted share, a 4.8% increase over is fourth quarter 2016

Net Earnings of $0.21 per diluted share.  DCT reported full-year 2017 Net Earnings of $1.11 per diluted share, a 7.8% increase over its 2016 Net Earnings of $1.03 per diluted share. Highlighting the Company's bright future, defendant Hawkins was quoted as stating, "DCT had a good fourth quarter, concluding another outstanding year . . . .  Given strong customer demand and low market vacancies, we expect 2018 will be another successful year for DCT - creating value as well as growing rents and NOI."

**The Sale Process**

34.     In early 2017, a real estate advisor representing a private investment firm, referred to in the Registration Statement as "Party A," contacted defendant Hawkins regarding interest in a potential strategic transaction.

35.     In March 2017, a financial advisor for Party A provided defendant Hawkins with an initial indication of interest of $50 to $51 per share in cash.  The Board decided not to pursue such a transaction.

36.     On October 26, 2017, Eugene F. Reilly, CEO, The Americas of Prologis, conveyed to defendant Hawkins Prologis' interest in a potential business combination with DCT.

37.     On January 8, 2018, representatives of Prologis proposed an all-stock transaction with an exchange ratio of 1.00 share of Prologis per DCT share.  The next month, the parties ceased discussions after being unable to agree on terms of a transaction.

38.     On February 13, 2018, Party A expressed interest in renewing discussions with the Company.

39.     On March 29, 2018, Hamid R. Moghadam ("Moghadam"), CEO of Prologis, informed the Company's financial advisor, BofA Merrill Lynch, that Prologis was prepared to move forward with an all-stock transaction based on an exchange ratio of 1.02 shares of Prologis

per DCT share.

40.     On April 3, 2018, Party A informed defendant Hawkins that it was prepared to move forward with a potential transaction at a price of $61.53 per share in cash, with the potential for an additional $1.00 to $1.50 per share.

41.     Following a Board meeting, the Board determined not to pursue further discussions with Party A.

42.     Throughout April 2018, Prologis, DCT and their advisors negotiated the remaining terms of the Merger Agreement and the Proposed Transaction based on Prologis' proposed exchange ratio of 1.02 per DCT share.

43.     At an April 29, 2018 Board meeting, BofA Merrill Lynch rendered its fairness opinion and the Board approved the Merger Agreement.  The parties then executed the Merger Agreement.

44.     Following execution of the Merger Agreement, DCT and Prologis issued a joint press release announcing the Proposed Transaction, which stated in relevant part:

> SAN FRANCISCO and DENVER, April 29, 2018 -- Prologis, Inc. (NYSE: PLD) and DCT Industrial Trust Inc. (NYSE: DCT) today announced that the two companies have entered into a definitive merger agreement by which Prologis will acquire DCT for $8.4 billion in a stock-for-stock transaction, including the assumption of debt. The boards of directors of both companies have unanimously approved the transaction.

> "For some time, we have considered DCT's realigned portfolio to be the most complementary to our own in terms of product quality, market position and growth potential," said Prologis chairman and chief executive officer Hamid R. Moghadam. "This high level of strategic fit will allow us to capture significant scale economies immediately. In addition, our current platform initiatives, particularly in the areas of advanced analytics, customer experience and procurement and ancillary revenues, will enable us to extract significant upside from the combined portfolios."

* * *

"This transaction underscores the exceptional quality of DCT's portfolio, platform and customer relationships, which our talented team has worked hard to create," said DCT Industrial president and chief executive officer Philip L. Hawkins. "Our shared commitment to quality, exceeding expectations and enhancing customer experience makes this a perfect combination."

"DCT's team is as good as it gets, and we expect a number to join us to help manage the portfolio, execute on capital deployment activities and make long-term contributions to the Prologis platform," said Prologis chief executive officer for the Americas Eugene F. Reilly. "This deal also diversifies our customer roster through the addition of some 500 new relationships."

The transaction is anticipated to create substantial synergies, including near-term synergies of approximately $80 million in corporate general and administrative cost savings, operating leverage, interest expense and lease adjustments, which are forecast to increase annual stabilized core funds from operations* (Core FFO) per share by $0.06-$0.08. A combination of revenue synergies and incremental development volume has the potential to generate $40 million of additional annual revenue and development profit in the future.

"This all-stock transaction enables us to maintain our strong balance sheet and significant financial flexibility," said Prologis chief financial officer Thomas S. Olinger. "In addition, the transaction increases our U.S. dollar net equity and drives additional core FFO growth."

Under the terms of the agreement, DCT shareholders will receive 1.02 Prologis shares for each DCT share they own. The transaction, which is currently expected to close in the third quarter of 2018, is subject to the approval of DCT stockholders and other customary closing conditions. At closing, it is anticipated that Philip L. Hawkins will join the Prologis board of directors.

**Insiders' Interests in the Proposed Transaction**

45.     DCT and Prologis insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of DCT.

46.     DCT's directors and executive officers stand to reap substantial financial benefits for securing the deal with Prologis, including accelerated vesting of all outstanding equity awards and settlement of all outstanding DCT phantom shares.  The following table sets forth the

number of unvested and vested DCT phantom shares held by the Company's non-employee directors:

| | Phantom Shares | |
|---|---|---|
| **Non-Employee Directors** | **Unvested** | **Vested** |
| Marilyn A. Alexander | 1,221 | 13,779 |
| Thomas F. August | 1,679 | 20,280 |
| John S. Gates, Jr. | 1,221 | — |
| Raymond B. Greer | 1,221 | 15,845 |
| Tripp H. Hardin | 1,221 | 19,797 |
| Tobias Hartmann | 1,221 | — |
| John C. O'Keeffe | 1,221 | — |
| Marcus L. Smith | 2,602 | — |

47.     Moreover, if they are terminated in connection with the Proposed Transaction, the Company's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

**Golden Parachute Compensation**

| Executive Officers | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total |
|---|---|---|---|---|
| Philip L. Hawkins | 6,509,162 | 8,644,409 | 69,994 | 15,223,565 |
| Matthew T. Murphy | 2,169,555 | 2,863,419 | 69,994 | 5,102,967 |
| Neil P. Doyle | 1,720,307 | 2,057,237 | 69,994 | 3,847,538 |
| John V. Pharris | 1,816,958 | 1,826,345 | 69,994 | 3,713,297 |
| John G. Spiegleman | 1,661,004 | 1,836,873 | 69,994 | 3,567,871 |

## The Registration Statement Contains Material Misstatements and Omissions

48.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to DCT's stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

49.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading

information concerning: (i) DCT and Prologis' financial projections, relied upon by DCT's financial advisor, BofA Merrill Lynch, in its financial analyses; (ii) the valuation analyses prepared by BofA Merrill Lynch in connection with the rendering of its fairness opinion; (iii) the background process leading to the Proposed Transaction; and (iv) BofA Merrill Lynch's potential conflicts of interest.  Accordingly, DCT stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning DCT's and Prologis' Financial Projections***

50.     The Registration Statement omits material information regarding DCT management's projections that were provided to and relied upon by BofA Merrill Lynch for its analyses.

51.     For example, the Registration Statement states:

In connection with rendering its opinion, BofA Merrill Lynch has, among other things:

* * *

reviewed certain estimates as to the amount and timing of cost savings (collectively, the "cost savings/synergies") anticipated by the management of Prologis, reviewed and approved for BofA Merrill Lynch's use by DCT, to result from the mergers. . . .

Registration Statement at 67.   Yet, the Registration Statement fails to set forth the "cost savings/synergies" anticipated by the management of Prologis, reviewed and approved for BofA Merrill Lynch's use by DCT, to result from the mergers.

52.     Additionally, the Registration Statement sets forth that:

after discussion with Prologis and its financial advisor, BofA Merrill Lynch prepared, at the direction of DCT, Prologis' estimated unlevered free cash flow from the Prologis management forecasts in order to facilitate certain of the financial analyses described in "Opinion of DCT's Financial Advisor."

* * *

> BofA Merrill Lynch prepared, at the direction of, and approved by, DCT, DCT's estimated unlevered free cash flow from the DCT management forecasts in order to facilitate certain of the financial analyses described in "Opinion of DCT's Financial Advisor."

Registration Statement at 78, 81. The Registration Statement further sets forth that for both the estimated unlevered free cash flow for Prologis and DCT, "[u]nlevered free cash flow was determined by making adjustments (including various non-cash items and capital expenditures) to Adjusted EBITDA. *Id*. at 79, 81. The Registration Statement fails, however, to disclose and quantify the specific adjustments, including various non-cash items and capital expenditures, to derive the unlevered free cash flow figures from Adjusted EBITDA.

53. The Registration Statement further fails to disclose for both DCT and Prologis the estimated EBITDA figures over the projection period. In its *Discounted Cash Flow Analyses* of DCT and Prologis, BofA Merrill Lynch specifically relied upon and utilized DCT and Prologis' terminal year estimated EBITDA to derive the terminal values for the analysis.

54. Moreover, for the DCT management forecasts, the Registration Statement fails to disclose over the projection period: (i) net income (loss) attributable to common stockholders; (ii) interest; (iii) taxes; (iv) depreciation and amortization; (v) stock-based compensation expense; (vi) noncontrolling interests; (vii) impairment losses; (viii) proportionate share of interest, depreciation and amortization from unconsolidated joint ventures; and (ix) non-FFO gains and losses on disposed assets and business combinations.

55. Furthermore, for the Prologis management forecasts, the Registration Statement fails to disclose over the projection period: (i) net earnings attributable to common stockholders; (ii) interest expense; (iii) income taxes; (iv) depreciation and amortization; (v) impairment

charges; (vi) gains or losses from the disposition of investments in real estate (excluding development properties and land); (vii) gains from the revaluation of equity investments upon acquisition of a controlling interest; (viii) gains or losses on early extinguishment of debt and derivative contracts (including cash charges); (ix) stock based compensation; and (x) unrealized gains or losses on foreign currency and derivatives.

56.     The omission of this material information renders the Registration Statement false and misleading, including, inter alia, the following sections of the Registration Statement: "Certain Prologis Unaudited Prospective Financial Information," "Certain DCT Unaudited Prospective Financial Information," and "Opinion of DCT's Financial Advisor."

***Material Omissions Concerning BofA Merrill Lynch's Financial Analyses***

57.     The Registration Statement describes BofA Merrill Lynch's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of BofA Merrill Lynch's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, DCT's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on BofA Merrill Lynch's fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to DCT's stockholders.

58.     With respect to BofA Merrill Lynch's *Selected Publicly Traded Companies Analysis* of Prologis and DCT, the Registration Statement fails to disclose: (i) the individual multiples for each of the selected companies analyzed by BofA Merrill Lynch; (ii) any benchmarking analyses BofA Merrill Lynch performed to compare Prologis and DCT to the selected companies; (iii) DCT's calendar year 2018 and 2019 estimated EBITDA; and (iv)

Prologis' calendar year 2018 and 2019 estimated EBITDA.

59.     With respect to BofA Merrill Lynch's *Net Asset Value Analysis* of Prologis and DCT, the Registration Statement fails to disclose: (i) quantification of the actual inputs and assumptions underlying the capitalization rates of 5.23% to 4.73% selected and used by BofA Merrill Lynch for DCT in its analysis; (ii) quantification of the actual inputs and assumptions underlying the capitalization rates of 5.21% to 4.71% selected and used by BofA Merrill Lynch for Prologis in its analysis; (iii) DCT's estimated cash net operating income for the next twelve months; (iv) Prologis' estimated cash net operating income for the next twelve months; (v) in the case of DCT, the range of implied operating real estate values, the value of unconsolidated joint ventures, institutional capital management and other fees, development projects in lease-up, development projects under construction and redevelopment, properties in pre-development, value-add acquisitions, land held and other assets, and the total amount of DCT's liabilities, each as based on information provided by DCT management; and (vi) in the case of Prologis, the range of implied operating real estate values, the value ascribed to strategic capital, net promotes, development management fees, developments and other assets, and the total amount of Prologis' liabilities, each as based on information provided by Prologis management.

60.     With respect to BofA Merrill Lynch's *Discounted Cash Flow Analysis* of DCT and Prologis, the Registration Statement fails to disclose: (i) DCT's terminal year estimated EBITDA; (ii) quantification of the inputs and the assumptions of the discount rate range for DCT of 6.9% - 8.3%; (iii) the amount of DCT's net debt as of March 31, 2018; (iv) Prologis' terminal year estimated EBITDA; (v) quantification of the inputs and the assumptions of the discount rate range for Prologis of 6.6% - 7.9%; (vi) the amount of Prologis' net debt, preferred stock and non-controlling interests as of March 31, 2018; and (vii) the implied perpetuity growth rates resulting

from the analyses.

61.     The omission of this information renders the Registration Statement false and misleading, including, inter alia, the following section of the Registration Statement: "Opinion of DCT's Financial Advisor."

**Material Omissions Concerning the Background Process of the Proposed Transaction**

62.     The Registration Statement omits material information relating to the sale process leading up to the Proposed Transaction.

63.     The Registration Statement fails to expressly indicate whether DCT entered into a confidentiality agreement with Party A, and if so, whether it is still in effect and/or contains a "don't ask, don't waive" ("DADW") standstill provision that is presently precluding Party A from making a topping bid for the Company.

64.     The disclosure of the existence and terms of any confidentiality agreements DCT entered into with any other party is crucial to DCT stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

65.     The omission of this information renders the statements in the "Background of the Mergers" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning BofA Merrill Lynch's Potential Conflicts of Interest**

66.     Further, the Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by BofA Merrill Lynch in serving as the Company's financial advisor.

67.     The Registration Statement sets forth that BofA Merrill Lynch provided the Board with a material relationships disclosure memorandum which included that:

> certain members of the financial advisory deal team working with DCT (i) have assisted Prologis on one or more capital markets transactions, (ii) are members of the coverage team for Prologis and (iii) had discussions from time to time with Prologis regarding potential opportunities not related to an acquisition of DCT.

Registration Statement at 61. The Registration Statement fails, however, to disclose whether the financial advisory deal team working with DCT, in their discussions from time to time with Prologis, ever provided Prologis with any valuation analyses concerning a potential combination of Prologis and DCT and whether BofA Merrill Lynch proposed any price terms for an acquisition of DCT by Prologis.

68.     Full disclosure of all potential conflicts concerning investment bankers is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives. DCT stockholders need to be provided with this information to assess whether the BofA Merrill Lynch deal team members engaged by DCT in connection with the Proposed Transaction had a strong historical relationship with Prologis that could have impacted their financial analyses provided to the Board or tainted the negotiation process.

69.     The omission of this information renders the statements in the "Background of the Mergers" and "Opinion of DCT's Financial Advisor" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

70.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive

relief sought herein.

## COUNT I

### Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

71.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

72.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

73.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the actual intrinsic standalone value of the Company, the financial analyses performed by the Company's financial advisor, the background process leading to the Proposed Transaction, and BofA Merrill Lynch's potential conflicts of interest.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

74.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

75.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

76.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Class Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

77.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

78.     The Individual Defendants acted as controlling persons of DCT within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as officers and/or directors of DCT and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

79.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

80.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Registration Statement at issue

contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

81.    In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

82.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

83.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, DCT's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class and against defendants as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 10, 2018                              Respectfully submitted,

                                                  /s/ Richard A. Acocelli
                                                  Richard A. Acocelli
                                                  **WEISSLAW LLP**
                                                  1500 Broadway, 16th Floor
                                                  New York, NY 10036
                                                  Telephone: (212) 682-3025
                                                  Facsimile: (212) 682-3010
                                                  Email: racocelli@weisslawllp.com

                                                  *Attorneys for Plaintiff*